UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TYRONE LAMAR REED JR.,

    Plaintiff,

v.

CASE NO.

HENDRY COUNTY, NESTOR ECHEVARRIA, in his individual capacity, MICHAEL AFONSO, in his individual capacity, SERGIO BUSTAMANTE, in his individual capacity, MICHAEL LUNA, in his individual capacity, and the CITY OF FORT MYERS,

    Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, TYRONE LAMAR REED JR. ("REED") by and through the undersigned counsel and files this Complaint against Defendants, HENDRY COUNTY, NESTOR ECHEVARRIA, in individual capacity ("ECHEVARRIA"), SERGIO BUSTAMANTE, in his individual capacity ("BUSTAMANTE"), MICHAEL AFONSO, in his individual capacity ("AFONSO"), the CITY OF FORT MYERS ("FORT MYERS"), and MICHAEL LUNA, in his individual capacity ("LUNA"), (collectively, "DEFENDANTS")[1] as follows:

---

[1] HENDRY COUNTY, ECHEVARRIA, BUSTAMANTE, and AFONSO shall collectively be referred to as "HENDRY COUNTY DEFENDANTS." FORT MYERS and LUNA shall be referred to as "FORT MYERS DEFENDANTS."

## JURISDICTION, VENUE, AND CONDITIONS PRECEDENT

1. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1343(a)(3).

2. Supplemental jurisdiction for the additional state law claims is proper pursuant to 28 U.S.C. § 1367(a) because they form part of the same case or controversy.

3. All conditions precedent for asserting the state law tort claims have been complied with pursuant to FLA. STAT. § 768.28.

4. The unlawful actions alleged were committed within the State of Florida, Hendry and Lee Counties. Therefore, venue is proper in this Court pursuant to 28 U.S.C. § 1391(b).

## PARTIES

5. At all times relevant to this Complaint, REED was a resident of Hendry County, Florida, and a citizen of the United States. He is an African American male and a member of a protected class.

6. At all times relevant to this Complaint, Sheriff Stephen H. Whidden ("SHERIFF WHIDDEN") was the duly appointed and acting Sheriff of the Hendry County Sheriff's Office ("HCSO"), acting under color of law. As such, he was the commanding officer of ECHEVARRIA, BUSTAMANTE, and AFONSO and was responsible for their training, supervision, and conduct. SHERIFF WHIDDEN was also responsible for enforcing the regulations of the HCSO and for ensuring that the law enforcement personnel of the HCSO obey the laws of the State of Florida and the United States. SHERIFF WHIDDEN's edicts and/or acts represent official policy of the HCSO and HENDRY COUNTY. *See Gilmere v. City of Atlanta, Ga.*, 737 F.2d 854, 902 (11th Cir. 1984) (quoting *Monell v. Dept. of Social Srvs. of City of New York*, 436 U.S. 658, 694 (1978)).

SHERIFF WHIDDEN is a "final policymaker for" HENDRY COUNTY. *See Greech v. Clayton Cnty, Ga.*, 335 F.3d 1326, 1330 (11th Cir. 2003).

7. At all times relevant to this complaint, Chief Derrick Diggs ("CHIEF DIGGS") was the duly appointed and acting Chief of Police for the Fort Myers Police Department ("FMPD"), acting under color of law. As such, he was the commanding officer of LUNA and was responsible for his training, supervision, and conduct. CHIEF DIGGS was also responsible for enforcing regulations of the FMPD and for ensuring that the law enforcement personnel of the FMPD obey the laws of the State of Florida and the United States. CHIEF DIGGS's edicts and/or acts represent official policy of the FMPD and FORT MYERS. *See Gilmere*, 737 F.2d at 902 (quoting *Monell*, 436 U.S. at 694). CHIEF DIGGS is a "final policymaker for" FORT MYERS. *See Greech*, 335 F.3d at 1330.

8. HENDRY COUNTY and FORT MYERS are valid defendants under *Monell*, 436 U.S. 658.

9. At all times relevant to this complaint, ECHEVARRIA was acting under color of law as a duly appointed and acting law enforcement officer of the HCSO holding the rank of Sergeant, employed by and serving under SHERIFF WHIDDEN. All actions taken by ECHEVARRIA were committed within Hendry County.

10. At all times relevant to this complaint, BUSTAMANTE was acting under color of law as a duly appointed and acting law enforcement officer of the HCSO holding the rank of Deputy Sheriff, employed by and serving under SHERIFF WHIDDEN. All actions taken by BUSTAMANTE were committed within Hendry County.

11. At all times relevant to this complaint, AFONSO was acting under color of law as a duly appointed and acting law enforcement officer of the HCSO holding the rank of Deputy

Sheriff, employed by and serving under SHERIFF WHIDDEN. All actions taken by AFONSO were committed within Hendry County.

12. At all times relevant to this complaint, LUNA was acting under color of law as a duly appointed and acting law enforcement officer of the FMPD holding the rank of Police Officer, employed by and serving under CHIEF DIGGS. All actions taken by LUNA were committed within Lee County.

## GENERAL ALLEGATIONS

*The Hendry County Sheriff's Office*

13. The HCSO, HENDRY COUNTY's primary law enforcement organization, under the leadership of SHERIFF WHIDDEN, has a well-known and publicized unwritten policy of condoning and encouraging racial discrimination and a wide variety of official misconduct. For example, HCSO has hired multiple individuals who had been found by other government agencies to have been responsible for racially discriminatory conduct, including, in one case, the use of a racial slur directed at a prisoner. Upon information and belief, HENDRY COUNTY, hired said individuals with full knowledge of their past discriminatory conduct.

14. Another example of the HCSO's policy of condoning racial discrimination and official misconduct can be seen in the promotion to Lieutenant (the fourth highest rank in the HCSO) of a deputy who was caught on camera using a racial slur and threatening to falsify a police report to implicate an innocent citizen. SHERIFF WHIDDEN publicly defended the Lieutenant for his use of a racial epithet and refused to comment on the Lieutenant's threats. Upon information and belief, the Lieutenant was not investigated or disciplined in any manner.

15. Under SHERIFF WHIDDEN the HCSO has also had a policy of condoning and promoting the use of excessive force. Multiple deputies have been hired by HCSO after being

dismissed from other agencies for verified complaints of excessive force. ECHEVARRIA is one such deputy. ECHEVARRIA's employment with the Florida Department of Corrections was terminated in 2007 after video surveillance verified an inmate's complaint that ECHEVARRIA had inappropriately grabbed the inmate by the arm and slammed him into a wall, pinning him there. Upon information and belief, the HCSO hired ECHEVARRIA with full knowledge of his previous dismissal from the Florida Department of Corrections.

16. The HCSO has also had a policy of encouraging the deprivation of basic constitutional protections to suspects. A Hendry County Circuit Judge granted a motion to suppress evidence when ECHEVARRIA was caught coercing a confession from a defendant after said defendant had requested an attorney, in clear violation of the defendant's rights under the Sixth Amendment to the United States Constitution and *Miranda*. The Office of the State Attorney ("OSA") was forced to drop all charges against the defendant. Upon information and belief, ECHEVARRIA was neither investigated nor disciplined for violating the Constitutional rights of this defendant.

17. In a twelve-year period, the HCSO hired **at least 51 deputies with documented histories of personal and professional misconduct,** "including racism, lying, fraud, [and] misuse of position…." Upon information and belief, the HCSO hired each and every one of the 51 deputies with full knowledge of their past misconduct.

18. Numerous other examples support REED's allegation that HENDRY COUNTY, through the HCSO, has a policy of condoning and encouraging: 1) racial discrimination; 2) the use of excessive force; 3) false and/or misleading testimony; and 4) violations of Constitutional and other civil rights, among other unlawful acts. This allegation will be further supported by the testimony of former law enforcement officials REED intends to call to testify at trial.

*The Shooting and Arrest of Tyrone Reed*

19. On the evening of May 16th, 2020, into the early morning hours of May 17th, 2020, hundreds of people were gathered at an annual festivity celebrating African American heritage in LaBelle, Florida.

20. There was a heavy HCSO presence. Among the HCSO personnel present were ECHEVARRIA, BUSTAMANTE, and AFONSO.

21. A little before 2:00 am on May 17th shots rang out from the crowd. The deputies drew their weapons and began attempting to locate an "active shooter." HENDRY COUNTY trains its deputies to "hunt" active shooters.

22. After forcibly detaining an individual later determined to have not been involved with the prior shooting, the deputies heard several more shots and again initiated a "hunt" for an "active shooter," moving in the direction they believed the shots to have come from.

23. At that point, the deputies were moving towards REED's property, which is located at 840 Kissimmee Avenue. As they progressed the deputies pointed their guns at and shoved multiple civilians while yelling profanities.

24. REED urged his pregnant girlfriend to go inside their house and seek shelter. REED then recognized the approaching deputies and raised his hands in the air in order to demonstrate that he was not a threat.

25. Deputies ECHEVARRIA, AFONSO, and BUSTAMANTE then opened fire at another civilian, discharging their weapons 16 times. ECHEVARRIA fired his HCSO issued Glock 17 9mm handgun four times; AFONSO fired his HCSO issued Glock 21 .45 caliber handgun four times; and BUSTAMANTE fired his HCSO issued Glock 21 .45 caliber handgun eight times.

26. One round grazed the civilian in the ribcage area, and another grazed him in the area of his right ankle.

27. REED, however, was struck by four rounds, knocking him to the ground. One round hit REED in his buttocks, another hit him in the back, another struck his shoulder, and the final round shattered REED's kneecap.

28. At the time he was shot, REED had not committed a crime, was not under arrest or detained, did not pose an imminent threat toward any law enforcement officer or civilian, and was not approaching any law enforcement officer or civilian in an aggressive or violent manner.

29. At the time he was shot, REED was located on his property at 840 Kissimmee Avenue in Labelle, Florida, and was not engaged in any illegal activity.

30. At the time of the shooting ECHEVARRIA, AFONSO, and BUSTAMANTE did not reasonably believe that the use of deadly force was necessary to defend themselves or others from bodily harm or death.

31. At the time of the shooting ECHEVARRIA, AFONSO, and BUSTAMANTE used deadly force that was unnecessary to prevent an arrest from being defeated by flight of a felon, did not give any warning regarding the use of deadly force, did not reasonably believe that a fleeing felon posed a threat of death or serious physical harm to them or others, and did not reasonably believe that a fleeing felon had committed a crime involving the infliction or threatened infliction of serious physical harm to another person.

32. After the shooting, several witnesses informed the deputies that neither of the people they shot was the "active shooter." It was subsequently determined that the Initial Shooting had taken place further down the block and did not involve REED or the other victim.

33. No deputy sheriff rendered any form of emergency aid to REED. REED was not rendered aid until approximately 15 minutes later when an ambulance finally arrived and transported REED to Lee Memorial Hospital.

34. While at Lee Memorial Hospital, REED was "guarded" by LUNA, and was not free to leave. At one point, REED was handcuffed to the hospital bed. REED's restraints were not removed until requested by hospital staff who were preparing to take REED to the operating room for his first surgery. REED was conscious and aware of the fact that he was imprisoned and of the restraints placed on him.

35. REED's first surgery removed the bullet that had entered his back. This bullet entered REED's back and lodged itself in REED's small intestine. As a result of the damage caused by Bullet 1, portions of REED's small intestine had to be removed.

36. REED's second surgery was performed to remove the bullet that had entered his right buttock.

37. REED will require at least one more surgery to remove the bullet that shattered his right kneecap and remains in his knee. Surgery will also be required to remove the bullet that entered REED's shoulder.

38. REED was hospitalized as a result of the shooting for almost two weeks. REED has and continues to suffer from pain, psychological harm, and disability from his injuries.

39. Without a warrant, HCSO confiscated REED's cellular telephone, drivers license and Social Security card.

## COUNT I
## FALSE ARREST
## (AS TO ECHEVARRIA, AFONSO, and BUSTAMANTE)

40. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

41. After the shooting, REED was conscious and aware of the fact that he was not free to leave the scene, despite not having committed any crime nor engaging in any illegal activity. Thus, REED had been placed under arrest.

42. ECHEVARRIA, AFONSO, and BUSTAMANTE are considered and deemed "person[s]" within the meaning of 42 U.S.C. § 1983.

43. ECHEVARRIA, AFONSO, and BUSTAMANTE effected the arrest of REED.

44. ECHEVARRIA, AFONSO, and BUSTAMANTE's actions were made under color of law based on their authority and official positions as sworn law enforcement officers of the HCSO.

45. No reasonable person, at the time of REED's arrest and based upon the information known to ECHEVARRIA, AFONSO, and BUSTAMANTE, at that time, would believe that REED had committed, was committing, or was about to commit a crime.

46. An objectively reasonable law enforcement officer ("LEO") would have known that ECHEVARRIA, AFONSO, and BUSTAMANTE's conduct was unconstitutional.

47. Punitive damages are available against ECHEVARRIA, AFONSO, and BUSTAMANTE.

## COUNT II
## EXCESSIVE FORCE
## (AS TO ECHEVARRIA, AFONSO, and BUSTAMANTE)

50. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

51. REED had a well-established constitutional right to be free of excessive force. *See Graham v. Conner*, 490 U.S. 386 (1989).

52. REED did not commit and was not suspected of committing a crime. At all times material hereto, REED was on his own property.

53. ECHEVARRIA, AFONSO, and BUSTAMANTE were acting under the color of law at all times material hereto. ECHEVARRIA, AFONSO, and BUSTAMANTE were "on-duty" and dressed in HCSO uniforms. Further, ECHEVARRIA, AFONSO, and BUSTAMANTE used HCSO issued firearms to shoot REED.

54. No reasonable person or LEO could believe that REED posed a threat to ECHEVARRIA, AFONSO, and BUSTAMANTE or the general public.

55. Despite these facts, and in violation of REED's well-established 4th Amendment rights, ECHEVARRIA, AFONSO, and BUSTAMANTE engaged REED with lethal force in order to effectuate an arrest on REED.

56. No reasonable person would consider the force used by ECHEVARRIA, AFONSO, and BUSTAMANTE to be objectively reasonable.

48. As a result of the unconstitutional acts of ECHEVARRIA, AFONSO, and BUSTAMANTE, REED suffered serious bodily harm and other injuries.

49. An objectively reasonable LEO would have known that ECHEVARRIA, AFONSO, and BUSTAMANTE's conduct was unconstitutional.

50. Punitive damages are available against ECHEVARRIA, AFONSO, and BUSTAMANTE.

### COUNT III
### EXCESSIVE FORCE
### (AS TO ECHEVARRIA, AFONSO, and BUSTAMANTE)

57. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

58. At all times material hereto, ECHEVARRIA, AFONSO, and BUSTAMANTE were acting under the color of law. ECHEVARRIA, AFONSO, and BUSTAMANTE were also "on-duty" as HCSO deputies and used HCSO issued firearms to shoot REED.

59. ECHEVARRIA, AFONSO, and BUSTAMANTE discharged their weapons in a reckless manner, spraying bullets indiscriminately across REED's property. Four of these bullets entered REED's body inflicting significant and permanent injuries.

60. The actions of ECHEVARRIA, AFONSO, and BUSTAMANTE violated clearly established law.

61. The actions of ECHEVARRIA, AFONSO, and BUSTAMANTE deprived REED of his well-established 14th Amendment rights.

62. Punitive damages are available against ECHEVARRIA, AFONSO, and BUSTAMANTE.

### COUNT IV
### FALSE ARREST
### (AS TO HENDRY COUNTY)

63. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above, as if fully set forth herein.

64. After the shooting, REED was conscious and aware of the fact that he was not free to leave the scene, despite not having committed any crime nor engaging in any illegal activity. Thus, REED had been placed under arrest.

65. ECHEVARRIA, AFONSO, and BUSTAMANTE effected the arrest of REED, acting under the color of law based on their authority and official positions as sworn law enforcement officers of the HCSO.

66. No reasonable person, at the time of REED's arrest and based upon the information known to ECHEVARRIA, AFONSO, and BUSTAMANTE, at that time, would believe that REED had committed, was committing, or was about to commit a crime.

67. An objectively reasonable LEO would have known that ECHEVARRIA, AFONSO, and BUSTAMANTE's conduct was unconstitutional.

68. The hiring practices and policies (both explicit and implicit) enacted by HENDRY COUNTY directly led to the deprivation of REED's 4th Amendment rights through his unlawful arrest.

69. HENDRY COUNTY's repeated failure to discipline HCSO LEOs for various forms of professional and personal misconduct directly led to the deprivation of REED's 4th Amendment rights through his unlawful arrest.

70. HENDRY COUNTY's conduct led directly to the injuries caused by REED's false arrest.

71. Punitive damages are available against HENDRY COUNTY.

## COUNT V
## EXCESSIVE FORCE
## (AS TO HENDRY COUNTY)

72. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above, as if fully set forth herein.

73. REED had a well-established constitutional right to be free of excessive force. *See Graham v. Conner*, 490 U.S. 386 (1989).

74. REED did not commit and was not suspected of committing a crime. At all times material hereto, REED was on his own property.

75. ECHEVARRIA, AFONSO, and BUSTAMANTE were acting under the color of law at all times material hereto. ECHEVARRIA, AFONSO, and BUSTAMANTE were "on-duty" and dressed in HCSO uniforms. Further, ECHEVARRIA, AFONSO, and BUSTAMANTE used HCSO issued firearms to shoot REED.

76. No reasonable person or LEO could believe that REED posed a threat to ECHEVARRIA, AFONSO, and BUSTAMANTE or the general public.

77. Despite these facts, and in violation of REED's well-established 4th Amendment rights, ECHEVARRIA, AFONSO, and BUSTAMANTE engaged REED with lethal force in order to effectuate an arrest on REED.

78. No reasonable person would consider the force used by ECHEVARRIA, AFONSO, and BUSTAMANTE to be objectively reasonable.

79. As a result of the unconstitutional acts of ECHEVARRIA, AFONSO, and BUSTAMANTE, REED suffered serious bodily harm and other injuries.

80. An objectively reasonable LEO would have known that ECHEVARRIA, AFONSO, and BUSTAMANTE's conduct was unconstitutional.

81. The hiring practices and policies (both explicit and implicit) enacted by HENDRY COUNTY directly led to the deprivation of REED's 4th Amendment rights through the use of excessive force.

82. Specifically, ECHEVARRIA was hired by HENDRY COUNTY despite full knowledge of his prior termination for the use of excessive force. Upon information and belief, ECHEVARRIA had numerous complaints filed against him for excessive force and other misconduct, but for which he was never disciplined.

83. Upon information and belief, numerous other HCSO deputies have had valid excessive force complaints filed against them, and HENDRY COUNTY failed to discipline the deputies, or modify HCSO training.

84. HENDRY COUNTY's conduct led directly to REED's injuries caused by the excessive force employed by HENDRY COUNTY's deputies.

85. Punitive damages are available against HENDRY COUNTY.

### COUNT VI
### EXCESSIVE FORCE
### (AS TO HENDRY COUNTY)

86. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above, as if fully set forth herein.

87. At all times material hereto, ECHEVARRIA, AFONSO, and BUSTAMANTE were acting under the color of law. ECHEVARRIA, AFONSO, and BUSTAMANTE were also "on-duty" as HCSO deputies and used HCSO issued firearms to shoot REED.

88. ECHEVARRIA, AFONSO, and BUSTAMANTE discharged their weapons in a reckless manner, spraying bullets indiscriminately across REED's property. Four of these bullets entered REED's body inflicting significant and permanent injuries.

89. The actions of ECHEVARRIA, AFONSO, and BUSTAMANTE violated clearly established law.

90. The hiring practices and policies (both explicit and implicit) enacted by HENDRY COUNTY directly led to the deprivation of REED's 4th Amendment rights through the use of excessive force.

91. Specifically, ECHEVARRIA was hired by HENDRY COUNTY despite full knowledge of his prior termination for the use of excessive force. Upon information and belief, ECHEVARRIA had numerous complaints filed against him for excessive force and other misconduct, but for which he was never disciplined.

92. Upon information and belief, numerous other HCSO deputies have had valid excessive force complaints filed against them, and HENDRY COUNTY failed to discipline the deputies, or modify HCSO training.

## COUNT VII
## EQUAL PROTECTION
## (AS TO HENDRY COUNTY DEFENDANTS)

93. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

94. REED has an established 14th Amendment right to equal protection.

95. ECHEVARRIA, AFONSO, and BUSTAMANTE used excessive force because REED is an African American. REED would not have been engaged with lethal force but for the fact that he is a member of a protected class.

96. ECHEVARRIA, AFONSO, and BUSTAMANTE were acting in accordance with policies of racially disparate treatment employed by HENDRY COUNTY.

97. HENDRY COUNTY has repeatedly failed to discipline officers for racially discriminatory behavior.

98. HENDRY COUNTY, despite full knowledge of racism in the ranks of its sheriff's department, failed to employ sufficient training to ensure REED's 14th Amendment rights would be protected during his interactions with HCSO deputies.

99. As a direct result of the 14th Amendment violations by ECHEVARRIA, AFONSO, BUSTAMANTE, and HENDRY COUNTY, REED suffered severe bodily harm.

100. Punitive damages are available against ECHEVARRIA, AFONSO, BUSTAMANTE, and HENDRY COUNTY.

## COUNT VIII
## FALSE ARREST
## (AS TO ECHEVARRIA, AFONSO, BUSTAMANTE, and LUNA)

101. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

102. At the hospital, REED was handcuffed to the hospital bed by LUNA.

103. LUNA "guarded" REED at the hospital.

104. LUNA is considered and deemed a "person" within the meaning of 42 U.S.C. § 1983.

105. LUNA effected the arrest of REED at the hospital.

106. LUNA's actions were made under the color of law.

107. At all times material hereto, LUNA was dressed in a FMPD uniform and "on-duty" with the FMPD.

108. No reasonable person, at the time of REED's arrest at the hospital, and based upon the information known to LUNA at that time, would believe that REED had committed, was committing, or was about to commit a crime.

109. An objectively reasonable LEO would have known that LUNA's conduct was unconstitutional.

110. Punitive damages are available against LUNA.

## COUNT IX
## BATTERY
## (AS TO HENDRY COUNTY)

111. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

112. Defendants ECHEVARRIA, AFONSO, and BUSTAMANTE intended to discharge their firearms resulting in REED suffering a harmful and/or offensive contact.

113. Defendants ECHEVARRIA, AFONSO, and BUSTAMANTE's battery on REED caused REED to suffer damages.

114. At all times material hereto, defendants ECHEVARRIA, AFONSO, and BUSTAMANTE were "on-duty" for the HCSO, wearing HCSO uniforms, and acting under the color of law.

## COUNT X
## FALSE IMPRISONMENT
## (AS TO HENDRY COUNTY)

115. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

116. Defendants ECHEVARRIA, AFONSO, and BUSTAMANTE intended to confine REED.

117. Defendants ECHEVARRIA, AFONSO, and BUSTAMANTE performed an act resulting in REED's confinement.

118. REED was conscious of the confinement and/or the resulting harm.

119. At all times material hereto, defendants ECHEVARRIA, AFONSO, and BUSTAMANTE were "on-duty" for the HCSO, wearing HCSO uniforms, and acting under the color of law.

120. The false imprisonment of REED caused REED to suffer damages.

## COUNT XI
## FALSE IMPRISONMENT
## (AS TO FORT MYERS)

121. REED realleges and incorporates by reference the allegations in paragraphs 1-39 above as if fully set forth herein.

122. Defendant LUNA intended to confine REED.

123. Defendant LUNA performed an act resulting in REED's confinement.

124. At all times material hereto, defendant LUNA was "on-duty" for the FMPD, wearing an FMPD uniform, and acting under the color of law.

125. REED was conscious of the confinement and/or the resulting harm.

126. The false imprisonment of REED caused REED to suffer damages.

## DEMAND FOR JURY TRIAL

REED requests a jury trial on all issues so triable.

## PRAYER FOR RELIEF

**WHEREFORE**, REED hereby demands judgment for damages, against the defendants, and any and all other relief this Honorable Court deems just and proper. REED further demands attorneys' fees as provided by 42 U.S.C. § 1988.

**BOYLE, LEONARD & ANDERSON, P.A.**

By: */s/ Thomas E. Shepard*
Thomas E. Shepard, Esq.
Florida Bar No.: 1037180
Alexander L. Brockmeyer, Esq.
Florida Bar No.: 105758
9111 W. College Pointe Drive
Fort Myers, Florida 33919
Telephone: (239) 337-1303
Facsimile: (239) 337-7674
Attorneys for Plaintiff

Primary E-Mail: Eservice@insurance-counsel.com
Secondary E-Mail: TShepard@insurance-counsel.com
Secondary E-Mail: ABrockmeyer@insurance-counsel.com

**GOLDBERG NOONE ABRAHAM**
Scot Goldberg, Esq.
Florida Bar No.: 45195
Logan Goldberg, Esq.
Florida Bar No.: 1007965
1533 Hendry Street, Suite 200
Fort Myers, Florida 33901
Telephone: (239) 461-5508
Facsimile: (239) 461-3915
Attorneys for Plaintiff
Primary E-Mail: service@goldberg-law.com
Secondary E-Mail: scotgoldberg@goldberg-law.com
Secondary E-Mail: logangoldberg@goldberg-law.com

**CASSIDAY SCHADE, LLP**
Bryan Findley, Esq.
Florida Bar No.: 113675
101 W. Ohio Street, Suite 1275
Indianapolis, Indiana 46204
Telephone: (317) 613-2366
Facsimile: (317) 613-2399
Attorneys for Plaintiff
Primary E-Mail: bfindley@cassiday.com