UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

TYRONE LAMAR REED JR.,

    Plaintiff,

v.                                            Case No.:  2:22-cv-0577-SPC-NPM

MICHAEL LUNA, in his individual
capacity, and the CITY OF FORT
MYERS,

    Defendants.
_____/

## ORDER

Before the Court are the Motions for Summary Judgment filed by the City of Fort Myers and Defendant Michael Luna.  (Docs. 90, 91).  For the following reasons, the Court denies summary judgment.

## BACKGROUND

The heart of this case involves the accidental shooting of Plaintiff Tyrone Lamar Reed Jr. by law enforcement officers at a neighborhood block party in Hendry County.  The main claims concerning Reed's shooting, however, have all been resolved.  The only two remaining claims focus on events that occurred in the aftermath of the shooting, specifically, the allegation that Fort Myers police officer Michael Luna detained Reed at the hospital while he received treatment for his injuries.  Reed alleges two counts connected to this conduct:

(1) Count IX, a § 1983 false arrest claim against Officer Luna, and (2) Count XV, a common law false imprisonment claim brought against the City of Fort Myers. Both Defendants have moved for summary judgment on the respective claims brought against them.

Some brief background on the shooting is relevant to the resolution of these two motions. A little before 2:00 am on May 17, 2020, shots rang out at the block party near Reed's house in Hendry County. During their search for the active shooter, Hendry County law enforcement officers shot at a man named LaTravis Williams who disobeyed their commands and ran towards the crowd with a gun. The officers shot Williams, but they also shot Reed, who was near Williams but was not the intended target. Reed was shot four times, in his back, buttocks, shoulder, and right knee. Williams was shot in the left ankle and chest. Williams and Reed were both taken by ambulance to Lee Memorial Hospital for treatment. After arriving at the hospital, Reed claims he was handcuffed to his hospital bed by Fort Myers Police Department (FMPD) Officer Michael Luna. Though he could not specifically identify the officer who handcuffed him due to the officer's face being covered by a black face mask, Reed claims that the officer was wearing a black uniform and was short and chubby.

Officer Luna was not involved in the shooting, but he was dispatched to the hospital by FMPD to address two gunshot victims who were being

transported to Lee Memorial. Upon his arrival at the hospital, Officer Luna asked where the two gunshot victims were located and was directed towards the trauma room. He claims he was the first member of the FMPD to arrive. He states that upon his arrival, Reed was in the trauma room with another patient who was not Williams. He states that Reed was not handcuffed when he entered the trauma room. At this point, Luna only knew that Reed was involved in a shooting in Hendry County and understood his orders to be to stand by with Reed until he received more information. Officer Luna testified that it was not until his direct supervisor, Sergeant Ramy Moussa, arrived at the hospital that he began to "guard" Reed on Sergeant Moussa's orders.

Officer Luna does not recall handcuffing Reed to the bed but does classify his guarding of Reed as a detention, and states that Reed was not free to leave. He also testified that the FMPD policy is to handcuff a patient if they are a known suspect or under arrest, but he says he does not know that he would have handcuffed someone he was guarding on behalf of Hendry County. He states that he eventually learned from Sergeant Moussa that Reed sustained his injuries in an officer-involved shooting, and he claims Reed also told him that he was shot by the police. He testifies that this is the first point at which he had reason to suspect Reed of a crime, because he assumed the police would not have shot Reed without probable cause to use deadly force.

Creating a significant fact dispute on this point, Sergeant Moussa denies ever giving Officer Luna orders to guard Reed and does not recall telling Luna any information about Reed's involvement in the shooting. In fact, Sergeant Moussa states he was not involved with the call whatsoever and was not at the hospital that day. Officer Luna testified that he guarded Reed until Hendry County Sheriff's Office (HCSO) and Florida Department of Law Enforcement (FDLE) arrived and took over, at which time he left the hospital.

Officer Luna testified that he had no interaction with Williams, but he also did not specifically recall that Reed was the individual he guarded at the hospital. The City uses this to argue that there is no evidence that Officer Luna in fact was the officer who guarded Reed. However, circumstantial evidence creates at least a reasonable inference that this role was undertaken by Officer Luna. Officer Luna testified that the shooting victim he was guarding had been shot in the right leg (which was elevated) and he would not have been able to walk given his injuries. This description is consistent with Reed's leg injury. Williams' injuries were more minor than Reed's, as he was grazed by a bullet in the left ankle and was discharged from the hospital later that day. FDLE Special Agent Charles Beatty testified that he arrived at Lee Memorial at 5:25 am on May 17, 2020 to begin his investigation into the shooting. Beatty testified that when he arrived, Reed was in surgery and Williams was in the trauma room being guarded by Officer Luna. However,

Officer Luna had custody of both Williams' and Reed's personal items, which he turned over to Beatty. So, on this record, whether or not Officer Luna guarded Reed is disputed.

The City also contends that it would have been impossible for Officer Luna to have handcuffed Reed given the timeline of events. But this too is disputed. The FMPD computer-assisted dispatch (CAD) notes reflect that Officer Luna arrived at the hospital at 3:05 am. Reed's medical records reflect that he had x-rays taken from 3:06 to 3:40 am. And Reed testified that his handcuffs were removed right before he was taken for x-rays. However, Reed's full testimony on the matter shows that he was likely confusing an x-ray with a CT scan. (Doc. 94-2 at 22:1-4 ("The X-ray is the little thing you go in? . . . If it's the little thing you go in, when your body goes in, and it, like, rotates around you. Yeah, I had that."))[1] Reed's CT scans were not performed until 3:40 am, according to medical records. And Reed's ER nurse, Jenna Harris, explained that unlike CT scans, x-rays are normally performed in the trauma room as soon as a patient arrives, the machine is portable so the images can be taken while the patient is in bed, and handcuffs wouldn't have to be removed to get the images. Viewing these disputed facts in Reed's favor as the

---

[1] Reed asserts in his response affidavit that the handcuffs were removed prior to a CT scan. The City argues that this assertion should be disregarded because it is plainly contradicted by his deposition testimony. The full context of Reed's deposition testimony reveals a possibility that he confused the two procedures. Ultimately, resolution of this issue requires a credibility determination not appropriate for the Court to make on summary judgment.

nonmovant, he was handcuffed to the bed from the time Officer Luna arrived at around 3:05 am until his CT scan at around 3:40 am.

## LEGAL STANDARD

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Material facts are those "that might affect the outcome of the suit under the governing law." *Id.*

The moving party bears the initial burden of showing the absence of any genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986*).* In deciding whether the moving party has met this initial burden, courts must review the record and draw all reasonable inferences in a light most favorable to the non-moving party. *Rojas v. Florida*, 285 F.3d 1339, 1341-42 (11th Cir. 2002).

When a moving party has discharged its burden, the non-moving party must then designate specific facts (by its own affidavits, depositions, answers to interrogatories, or admissions on file) that demonstrate there is a genuine issue for trial. *Porter v. Ray*, 461 F.3d 1315, 1320-1321 (11th Cir. 2006) (citation omitted). "If a party fails to properly support an assertion of fact or fails to properly address another party's assertion of fact . . . the court may

grant summary judgment if the motion and supporting materials . . . show that the movant is entitled to it." Fed. R. Civ. P. 56(e).

## DISCUSSION

**A. False Arrest Claim Against Officer Luna**

The only claim brought against Officer Luna alleges that he violated Reed's Fourth Amendment constitutional rights by arresting him without probable cause. Officer Luna makes the same two arguments in his summary judgment motion that he made in his motion to dismiss: (1) that he merely detained Reed and did not arrest him, and (2) that he is entitled to qualified immunity. Unfortunately for Officer Luna, little has changed factually since the Court's denial of his motion to dismiss when the disputed evidence is viewed in Reed's favor.

As was the case at the dismissal stage, Officer Luna's arguments turn on a determination that his encounter with Reed was an investigatory detention, rather than an arrest. "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot," the officer may briefly stop the suspicious person and make "reasonable inquiries" aimed at confirming or dispelling his suspicions. *Terry v. Ohio*, 392 U.S. 1, 30 (1968). Therefore, it is well-established under the Fourth Amendment that an officer may briefly detain

and conduct a limited search of a person if the officer has, based on the totality of the circumstances, a "reasonable suspicion" that the person has engaged in, is engaged in or is about to engage in a crime. *United States v. Acosta*, 363 F.3d 1141, 1145–46 (11th Cir. 2004). This temporary detention is deemed to be a less intrusive invasion of privacy than a formal arrest and, therefore, may be constitutionally accomplished merely on articulable or founded suspicion of criminal activity. *Terry*, 392 U.S. at 21. "When the totality of circumstances indicate that an encounter has become too intrusive to be classified as a brief seizure, the encounter is an arrest and probable cause is required." To distinguish between a *Terry* stop and an arrest, the court examines four non-exclusive factors: (1) the purpose of the stop; (2) the diligence with which the agents pursued their investigation; (3) the scope and intrusiveness of the stop; and (4) the duration of the stop. *Acosta*, 363 F.3d at 1146.

Here, as was the case at the pleading stage, the facts, taken in the light most favorable to Reed, do not support Officer Luna's contention that Reed was merely subjected to an investigatory detention. First, Officer Luna argues that Reed was seized by the Hendry County police officers when he was shot, and thus, had *already* been detained by the time Luna encountered him. Officer Luna contends that he merely continued the detention initiated by the Hendry County officers for a short time to allow those officers to complete their investigation. However, a Fourth Amendment seizure occurs "only when there

8

is a governmental termination of freedom of movement *through means intentionally applied.*" *Brower v. Cnty. of Inyo*, 489 U.S. 593, 597 (1989). Here, because Reed was not intentionally shot, no seizure occurred prior to Reed's arrival at the hospital.

Moreover, because Reed was not intentionally seized by HCSO or suspected of any crime, HCSO never asked FMPD to detain Reed for any investigation. Officer Luna concedes that he did nothing to further an investigation, because he assumed it was being handled by Hendry County. And, to the extent that Officer Luna contends that he was just following orders from Sergeant Moussa, this is disputed by Moussa. So, there was no investigation being pursued—diligently or otherwise.

The evidence viewed in the light most favorable to Reed also shows that his detention by Officer Luna was excessive in its scope and intrusiveness. Given that there was no investigation of Reed underway at the time Officer Luna guarded Reed, no valid law enforcement purpose could have been served by detaining Reed at all. Officer Luna argues that given the nature of Reed's injuries, he would not have been able to leave the hospital bed regardless of Officer Luna's presence in the doorway or the handcuffs. However, this argument goes to damages, not the reasonableness of Reed's detention. *Luke v. Gulley*, 50 F.4th 90, 96 (11th Cir. 2022) ("When constitutional rights are violated, a plaintiff may recover nominal damages even though he suffers no

compensable injury."). And, if anything, the fact that Reed was unable to walk out of the room due to his injuries would make it *more* unreasonable and intrusive for Officer Luna to have handcuffed him.

Finally, the length of time that Reed was detained is disputed in this record. However, after resolving the disputes in Reed's favor, he was handcuffed for more than 30 minutes and was guarded by Officer Luna for nearly four hours. Thus, the totality of the circumstances supports a finding that Reed was arrested by Officer Luna.

Even if it was undisputed that the detention was merely an investigatory stop, summary judgment would still be inappropriate because the parties dispute whether the detention was justified. Officer Luna contends that any detention of Reed was supported by reasonable suspicion given his knowledge that Reed had been shot by police officers. But, setting aside the question of whether this information alone would be sufficient to suspect Reed of a crime, Officer Luna admits that it was *not* known to him when he first started guarding Reed. And Officer Luna claims to have later gained this information from Sergeant Moussa, but Sergeant Moussa denies ever giving it to him. Reed attests that he told Officer Luna that he was shot by the police only *after* being handcuffed. So, viewing the disputed facts in the light most favorable to Reed, Officer Luna did not have *any* reasonable suspicion (or probable cause) at the time he began guarding Reed and allegedly handcuffed him to the bed. Officer

Luna also briefly argues in a footnote that he would have been justified in detaining Reed as a witness, but he, again, bases this argument on information that he does not claim to have known concerning Reed's involvement with the shooting at the block party.

The Court rejects Officer Luna's qualified immunity argument for the same reasons. "Qualified immunity protects government officials performing discretionary functions from suits in their individual capacities unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Gates v. Khokhar*, 884 F.3d 1290, 1298 (11th Cir. 2018). Proper application of the defense of qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Id.* In the context of a false arrest claim, "[q]ualified immunity applies when there was arguable probable cause for an arrest even if actual probable cause did not exist." *Burnett v. Unified Gov't of Athens-Clarke Cnty., Ga.*, 395 F. App'x 567, 569 (11th Cir. 2010). Arguable probable cause exists if a reasonable officer in the same circumstances and possessing the same information as the defendant could—not necessarily would—have believed that probable cause was present. *Brown v. City of Huntsville, Ala.*, 608 F.3d 724, 734 (11th Cir. 2010).

As discussed above, when all disputed evidence is resolved in Reed's favor, Officer Luna entered the trauma room and handcuffed Reed to the

11

hospital bed on his own accord, with no reason to suspect him of a crime and with no investigation being pursued. He then left Reed handcuffed for at least 30 minutes and stood guard in the doorway until Reed was taken for surgery. While these may not be the actual facts of the case, they are the facts the Court must accept at the summary judgment stage. *Lee v. Ferraro*, 284 F.3d 1188, 1190 (11th Cir. 2002). And no reasonable officer could have believed probable cause existed under these circumstances. And the Eleventh Circuit's binding precedent clearly establishes that an arrest made without arguable probable cause violates the Fourth Amendment's prohibition on unreasonable searches and seizures. *See Skop v. City of Atlanta, GA*, 485 F.3d 1130, 1144 (11th Cir. 2007) (holding that where the resolution of disputed critical facts determines on which side of the arguable probable cause line the officer's conduct fell, summary judgment is inappropriate). As such, Officer Luna's Motion is due to be denied.

### B. False Imprisonment Claim Against the City

The other remaining claim is Reed's claim of false imprisonment brought against the City of Fort Myers. The elements of a cause of action for false imprisonment are: (1) the unlawful detention and deprivation of liberty of a person (2) against that person's will (3) without legal authority or "color of authority" and (4) which is unreasonable and unwarranted under the circumstances. *Mathis v. Coats*, 24 So. 3d 1284, 1289 (Fla. 2d DCA 2010).

While closely related, false imprisonment is broader than false arrest; a false arrest is just one of several methods of committing false imprisonment. *Id.* The City presents three arguments for summary judgment, all of which fail.

First, the City contends that there is no evidence that Officer Luna is the officer who participated in the false imprisonment of Reed. The City suggests that it would be impossible for Officer Luna to have handcuffed Reed given the timeline of Officer Luna's arrival at the hospital and the timing of Reed's x-rays as documented in his medical records. However, as discussed above, when viewed in the light most favorable to Reed, the record contains sufficient circumstantial evidence from which a reasonable jury could conclude that it was Officer Luna who guarded and handcuffed Reed. At the very least, there is a triable issue of fact that precludes summary judgment in the City's favor on this point.

Second, the City argues that any detention of Reed by Officer Luna would have been lawful and warranted under the circumstances given Officer Luna's knowledge that Reed was shot by the police. But again, whether Officer Luna possessed this knowledge at the time he guarded and handcuffed Reed is disputed. So, this argument for summary judgment fails as well.

Finally, the City requests summary judgment because it argues that Officer Luna is entitled to qualified immunity. But the City lacks standing to assert the defense of qualified immunity on Officer Luna's behalf. Qualified

13

immunity is a defense available only to individuals sued in their individual capacity. *Owen v. City of Indep., Mo.*, 445 U.S. 622, 657 (1980). Nevertheless, the Court already explained why qualified immunity is not available to Officer Luna at this stage of the proceedings. Therefore, the City's Motion is due to be denied.

Accordingly, it is

**ORDERED:**

1. Defendant City of Fort Myers' Motion for Summary Judgment (Doc. 90) is **DENIED**.

2. Defendant Michael Luna's Motion for Summary Judgment (Doc. 91) is **DENIED**.

3. This case is **REFERRED** to United States Magistrate Judge Nicholas P. Mizell to conduct a settlement conference and issue any order deemed appropriate. All parties must attend the settlement conference as directed by Judge Mizell. On or before **July 10, 2024**, the parties must contact Judge Mizell's chambers at 239-461-2170 to arrange for a mutually agreeable date and time for the settlement conference.

**DONE** and **ORDERED** in Fort Myers, Florida on July 3, 2024.

*Sheri Polster Chappell*
SHERI POLSTER CHAPPELL
UNITED STATES DISTRICT JUDGE

Copies: Counsel of record

15